UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD BAYANI,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Warden at Otay Mesa Detention Center; DANIEL A. BRIGHTMAN, San Diego Field Office Director, Immigration and Customs Enforcement and Removal Operations ("ICE/ERO"); TODD LYONS, Acting Director, Immigration and Customs Enforcement ("ICE"); KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS"); PAMELA BONDI, Attorney General of the United States; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,<br><br>Respondents. | Case No.: 26-cv-0266-JES-VET<br><br>**ORDER GRANTING MOTION TO ENFORCE JUDGMENT**<br><br>**[ECF Nos. 9, 12]** |

Before the Court is a motion by Petitioner Mohammad Bayani ("Petitioner") to enforce this Court's January 26, 2026, order requiring Respondents to provide Petitioner with a constitutionally adequate bond hearing. ECF No. 9 ("Mot."). Pursuant to the Court's

26-cv-0266-JES-VET

order, Respondents filed a response in opposition to the motion (ECF No. 15 ("Opp'n")) and Petitioner filed a reply (ECF No. 17 ("Reply")). For the reasons set forth below, the Court **GRANTS** the motion.

## I.    BACKGROUND

Petitioner is a citizen of Iran who fled his home country due to religious persecution. Pet. ¶¶ 16-17. Petitioner entered the United States on January 5, 2025, and was immediately detained. *Id.* ¶ 19.

On January 16, 2026, Petitioner filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1. After briefing by the parties, the Court granted the petition and ordered Respondents to provide Petitioner with a bond hearing, specifying that "the IJ may not deny Petitioner bond on the basis that he is detained under 8 U.S.C. § 1225(b), but must find by clear and convincing evidence that Petitioner is a flight risk or danger to the community." ECF No. 6 at 9.

On February 2, 2026, Petitioner was provided with a bond hearing, a transcript of which was provided to the Court. ECF No. 16 ("Trans."). In the hearing, the immigration judge ("IJ") noted the Court's order. Trans. at 2. Respondents submitted that they bore the burden to establish danger to the community and/or flight risk to justify continued detention. *Id.* at 3. Respondents did not argue danger to the community. *Id.* Respondents argued that Petitioner was a flight risk because he entered the United States without inspection, and did not have family ties or a history of employment in the country. *Id.* at 3. Respondents stated that a person named Jennifer Long, director of a shelter for immigrants in Texas called Casa Marianella, was a sponsor for Petitioner, but argued that she was not a personal sponsor. *Id.* Respondents stated that, "There's an argument that [Petitioner] now has ties in Austin, Texas with his new family and friends at this organization, but it does not, again, appear to be a family tie or a close tie to the respondent in the United States. And those are the issues with flight, your honor." *Id.*

Petitioner argued that the government had not met its burden to show that he was a flight risk by clear and convincing evidence. *Id.* at 4. Petitioner argued that he had been in

custody since his arrival, so he was unable to establish community ties or a work history. *Id.* Petitioner argued that Casa Marianella had agreed to take him in and transport him to hearings. *Id.* Petitioner stated that he had no criminal history in this country or in Iran, and argued that he would be motivated to pursue his claim here because conversion to Christianity, the basis of his asylum claim, is punishable by death in Iran. *Id.* Regarding Petitioner's entry into the country, Petitioner stated that the form I-213 says that Petitioner was found with a group of 50 individuals who were waiting to be encountered by CBP. *Id.* He argued that this showed he was not trying to evade the government. *Id.* Petitioner also argued that he felt compelled to cross without inspection on January 1, 2025, because "there was a clear indication that nobody was going to be allowed into the United States after January 20th." *Id.*

The IJ briefly verified that Petitioner was seeking asylum-related relief, and had a merits hearing on March 13, 2026. *Id.* at 5. The IJ then denied bond, explaining her reasoning on the record as follows:

> The court is complying with the district court's order and holding a bond hearing. The court must determine whether he's a flight risk or a danger to the community and assess the factors. That is the rule of the court, and I'm going to do so at this time. Now, with regards to the respondent having no family ties, the court is not going to hold that against the respondent, but it just notes so, for the record. Now, the court does -- and the respondent did not provide a point of contact at entry, but that makes sense, given that he's indicated he has no family ties. The court is not going to find the respondent's a danger to the community, but the court does have concerns regarding the respondent's flight risk. Now, the respondent does have an upcoming hearing on March 13, 2026, in about a month and -- in about a month, or so -- month and a few days. The court can consider that. I understand the respondent's been -- is arguing that he's had prolonged detention, and that is why we are having a bond hearing under the district court's order, but the fact is, the respondent has an upcoming merits hearing, where he can have his applications for relief and his claim resolved in an efficient manner. So, it wouldn't make sense to this court that a -- respondent be released, and then, have his proceedings and applications for relief prolonged. That's counterintuitive. If the respondent really wants his claims to be heard, the court would assume he'd want them heard as soon as possible. But even setting

3

26-cv-0266-JES-VET

that aside, counsel makes the argument that he was in a group of 50 individuals. It was January 5th, 2025. No clear indication that -- there was a clear indication no one would be allowed into the United States, and so, he felt compelled to enter the United States without inspection, rather than seek a CBP One appointment. The court disagrees with counsel's arguments. The -- whether he was alone, or in a group of 50 individuals, it was January 5th, 2025. The respondent, fearing harm in his country of Iran based on his conversion to Christianity, could have presented himself at a designated port of entry and sought asylum. He did not do so. So, that does indicate to the court that there's a concern regarding evasion of immigration officials, and that goes to flight risk, as well. There's also a CLP bar at issue with regards to asylum, which will be litigated at the merits hearing in March. The court considers that, as well. So, based on these factors, the court is going to find that the respondent is a significant flight risk, and that there's no amount of bond that would suffice to mitigate that risk. And that is going to be the order of the court.

*Id.* at 6-7.

On February 16, 2026, Respondents filed a Notice of Compliance, indicating that a timely bond hearing was held where Petitioner was denied bond because: "Deemed to be a significant flight risk, and no amount of bond will mitigate such risk. Court's reasoning and findings stated on the bond record." ECF No. 8-1 at 1.

## II. LEGAL STANDARD

District courts have the authority to review compliance with prior orders granting habeas relief, including orders for bond hearings. *Leonardo v. Crawford*, 646 F.3d 1157, 1161 (9th Cir. 2011). The party challenging compliance with the bond order bears the burden of proof, and ambiguities are resolved in favor of the non-moving party. *C.A.R.V. v. Wofford*, No. 1:25-CV-01395-JLT-SKO, 2026 WL 241823, at *3 (E.D. Cal. Jan. 29, 2026).

"When questions require a close review of agency-found facts," like an administrative judge's finding of dangerousness or flight risk in a bond hearing, "we review for an abuse of discretion." *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024); *see also Loba L.M.*, 2026 WL 710307 at *5 (applying abuse of discretion standard to review

compliance with an order for bond hearing on habeas); *Y.S.G. v. Andrews*, No. 2:25-CV-1884-SCR, 2025 WL 2979309, at *8 (E.D. Cal. Oct. 22, 2025) (same); *C.A.R.V.*, 2026 WL 241823 at *6 (same). "Under an abuse of discretion standard, we cannot reweigh evidence but can only determine whether the [agency] applied the correct legal standard." *Id.* (cleaned up). The Court's review for abuses of discretion is limited to those which allege "violation by the agency of constitutional, statutory, regulatory or other legal mandates or restrictions." *See Abdelhamid v. Ilchert*, 774 F.2d 1447, 1450 (9th Cir. 1985) (quoting *Strickland v. Morton*, 519 F.2d 467, 471 (9th Cir. 1975)).

The government's discretion in immigration bond hearings is constrained by the requirements of due process. *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process."). A noncitizen may show that an IJ abused her discretion in violation of the due process clause in a bond hearing by demonstrating either that the IJ "simply did not apply the right standard to the facts" or that "the IJ erred because the evidence itself could not—as a matter of law—have supported the decision to deny bond." *Garcia v. Hyde*, No. 25-CV-585-JJM-PAS, 2025 WL 3466312, at *7 (D.R.I. Dec. 3, 2025) (internal quotations omitted); *see also Nat. Res. Def. Council, Inc. v. Pritzker*, 828 F.3d 1125, 1135 (9th Cir. 2016) ("An agency acts contrary to the law when it gives mere lip service or verbal commendation of a standard but then fails to abide the standard in its reasoning and decision.").

## III.   DISCUSSION

### A. Administrative Exhaustion

Respondents argue that Petitioner is required to exhaust administrative remedies regarding his bond determination before the Board of Immigration Appeals ("BIA") before bringing a motion to enforce judgment in this Court. Opp'n at 4. Petitioner argues that exhaustion is not required in the context of a motion to enforce, and, further, than exhaustion would be futile here. Reply at 3. For the reasons set forth below, the Court agrees.

26-cv-0266-JES-VET

"Exhaustion can be either statutorily or judicially required." *Acevedo-Carranza v. Ashcroft*, 371 F.3d 539, 541 (9th Cir. 2004). "If exhaustion is statutory, it may be a mandatory requirement that is jurisdictional." *Id.* (citing *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review,* 959 F.2d 742, 747 (9th Cir.1991)). "If, however, exhaustion is a prudential requirement, a court has discretion to waive the requirement." *Id.* (citing *Stratman v. Watt,* 656 F.2d 1321, 1325–26 (9th Cir.1981)).

In the context of petitions for writ of habeas corpus for immigration detainees under 2241, "exhaustion is a prudential rather than jurisdictional requirement." *Singh v. Holder*, 638 F.3d 1196, fn. 3 (9th Cir. 2011). "[C]ourts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotations and citations omitted). Exhaustion may be excused for "a number" of reasons, including "where administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Laing v. Ashcroft*, 370 F.3d 994, 1000 (9th Cir. 2004) (internal quotation and citation omitted).

In cases of motions to enforce bond orders, "any alleged exhaustion requirement [] must fully contend with the Court's continuing authority to enforce its own injunction." *C.A.R.V.*, 2026 WL 241823, at *4. In *Leonardo v. Crawford*, the Ninth Circuit contended with the administrative exhaustion requirement in the context of a petitioner's motion to enforce a prior bond order. 646 F.3d at 1160-61. The Court explained that "the district court had authority to review compliance with its earlier order conditionally granting habeas relief," and that the lower court had indeed exercised that authority by determining that the government complied with its prior order. *Id.* at 1161. However, the Court also explained that "[t]he district court was under no obligation to address Leonardo's new

26-cv-0266-JES-VET

arguments under the ambit of ensuring compliance with the earlier order," and that under ordinary circumstances, a petitioner must either exhaust administrative remedies or show an excuse for exhausting remedies before seeking relief in federal court. *Id.* at 1161, 1160. Although one court in this District recently dismissed a motion to enforce for failure to exhaust by minute order, citing *Leonardo,* (*see Rana v. LaRose*, No. 26-cv-00285-RSHDDL, ECF No. 11 (S.D. Cal. Mar. 13, 2026)), other courts have excused administrative exhaustion for the limited purpose of ensuring compliance with a previous order where petitioner shows that an excuse applies or the applicability of an exception is apparent on the face of the motion. *See, e.g., Izaguirre v. Freden*, No. 6:25-CV-6672-EAW, 2025 WL 3551788, at *1 (W.D.N.Y. Dec. 11, 2025) (holding that exhaustion was not required because, "[a]mong other reasons, exhaustion would be futile under these circumstances."); *Loba L.M.*, 2026 WL 710307, at *5 (excusing exhaustion despite the petitioner not making "an explicit showing" of an excuse in the motion to enforce, because the court had previously found ongoing irreparable harm in its previous order); *Morgan v. Oddo*, No. 3:24-CV-221, 2025 WL 2653707, at *3–4 (W.D. Pa. Sept. 16, 2025) (noting the difficulty in applying the exhaustion requirement to motions to enforce and excusing prudential exhaustion); *see also Mau v. Chertoff*, 562 F. Supp. 2d 1107 (S.D. Cal. 2008) (holding that exhaustion was not required for the limited scope of review of a motion to enforce); *Judulang v. Chertoff*, 562 F. Supp. 2d 1119 (S.D. Cal. 2008) (same); *Sales v. Johnson*, 2017 WL 6855827 (N.D. Cal. Sept. 20, 2017) (same).

Here, Petitioner argues that the administrative exhaustion requirement should not apply in this case and that, if it does, his failure to exhaust administrative remedies should be excused under the futility exception. Mot. at 5. In the reply, Petitioner also raises the difficulty of appealing to the BIA considering the lengthy timeline of appeal, the importance of his liberty interest at stake, and the Court's competence with issues of constitutional law as required for the scope of this motion. Reply at 3-4. Other district courts have excused prudential exhaustion under nearly identical facts and arguments. *See*

26-cv-0266-JES-VET

*Izaguirre*, 2025 WL 3551788, at *1; *Loba L.M.*, 2026 WL 710307 at *5; *Morgan v. Oddo*, 2025 WL 2653707, at *3–4.

Respondents argue that Petitioner should be required to exhaust administrative remedies before seeking relief here because (1) agency expertise is required; (2) waiving exhaustion would encourage other detainees to bypass the BIA; and (3) civil detention is not an irreparable injury. Opp'n at 4-5. Respondents' first concern is remedied by the narrow scope of the Court's review: the Court will only determine whether the bond hearing was constitutionally adequate as required by its prior order, and not delve into areas of discretionary decisions made by the IJ. *See, infra*, Legal Standard. Respondents' second concern is similarly remedied by the posture of this motion, which depends on the Court's continuing jurisdiction to ensure compliance with its orders. *See Leonardo*, 646 F.3d at 1161. Finally, the Court finds Respondents' argument that civil detention is not an irreparable injury unpersuasive where the Court's prior order found that Respondents had violated Petitioner's due process rights by holding him in conditions "not meaningfully distinguishable from penal confinement" without any individualized custody determination for over a year. *Bayani v. LaRose*, No. 26-CV-0266-JES-VET, 2026 WL 194748, at *3 (S.D. Cal. Jan. 26, 2026); *see also Kydyrali v. Wolf*, 499 F. Supp. 3d 768, 773 (S.D. Cal. 2020) (explaining that Otay Mesa Detention Center is "a private, for-profit detention center operated by CoreCivic, Inc., which also runs many state penitentiaries" where detention is "indistinguishable from penal confinement.").

After careful consideration of the factors raised by Petitioner and the arguments of the parties, the Court agrees and joins its sister courts in excusing prudential exhaustion in this case for purposes of reviewing compliance with the Court's prior order for a bond hearing. *See Izaguirre*, 2025 WL 3551788, at *1; *Loba L.M.*, 2026 WL 710307, at *5; *Morgan v. Oddo*, 2025 WL 2653707, at *3–4.

### B. Due Process

Petitioner argues that the immigration judge failed to place the burden of clear and convincing evidence on the government at the bond hearing, in violation of his due process

26-cv-0266-JES-VET

rights. Mot. at 9-12. The government does not directly refute this argument, but states that the bond hearing was compliant with the court's order. *See* Opp'n at 1. The Court thus analyzes the motion on its face, and agrees with Petitioner.

In bond hearings for aliens detained under 8 U.S.C. § 1225, as a matter of due process, IJs must place the burden on the government to prove by clear and convincing evidence that the alien is either a flight risk or danger to the community. *See Sandesh v. LaRose*, No. 26-CV-0846-JES-DDL, 2026 WL 622690, at *4-5 (S.D. Cal. Mar. 5, 2026) (explaining that that the due process standards set forth in *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), were still good law as to bond hearings for those detained under § 1225); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1121 (W.D. Wash. 2019) (same); *Gao v. LaRose*, 805 F. Supp. 3d 1106, 1112 (S.D. Cal. 2025) (same). The clear and convincing evidence standard is an "intermediate burden of proof" applied when "particularly important interests are at stake." *Mondaca-Vega v. Lynch*, 808 F.3d 413, 422 (9th Cir. 2015) (internal quotations omitted, cleaned up). The standard "requires an abiding conviction that the truth of the factual contentions at issue is highly probable." *Id.*

In *Matter of Guerra*, the BIA held that IJs may consider any evidence in the record when assessing bond eligibility, so long as the evidence is "probative and specific." 23 I&N Dec. 37 (BIA 2006). The BIA listed a non-exhaustive set of factors which IJs may consider in making such determinations:

> (1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States, and whether they may entitle the alien to reside permanently in the United States in the future; (4) the alien's employment history; (5) the alien's record of appearance in court; (6) the alien's criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the alien's history of immigration violations; (8) any attempts by the alien to flee prosecution or otherwise escape from authorities; and (9) the alien's manner of entry to the United States.

*Id.* at 40. In Matter of *Guerra* itself, the BIA upheld an IJ's finding that a non-citizen was bond ineligible based on a criminal complaint without a conviction. *Id.* at 41. The BIA

26-cv-0266-JES-VET

emphasized the indicia of reliability in the criminal complaint, and the scope and seriousness of the criminal conduct alleged, which made it reasonable for the IJ to give the complaint significant weight in determining dangerousness. *Id.*

Since *Matter of Guerra*, several federal courts have used the "probative and specific" evidence requirement to determine whether IJ's bond determinations comport with due process constraints. *See Garcia*, 2025 WL 3466312 at *9 (collecting cases). In *Garcia*, a district court held that an IJ had committed legal error by relying on a ten-year-old warrant to find flight risk and ignoring evidence which raised issues with the warrant. *Id.* at *10-11. The court explained that "the IJ violated [petitioner]'s due process rights because, in denying his request for bond, she relied exclusively on evidence that was not probative and specific." *Id.* (internal quotation omitted). Similarly, in *Ortega-Rangel v. Sessions*, a district court found that the mere "fact of [petitioner's] arrest [was] not 'probative and specific' and therefore the IJ's sole reliance on her arrest to detain her violated due process." 313 F. Supp. 3d 993, 1005 (N.D. Cal. 2018).

Here, Petitioner argues the IJ failed to apply the proper standard at the hearing based on four main errors: (1) relying on Petitioner's upcoming hearing date and entrance without inspection into the United States to find that he was a flight risk; (2) implicitly shifting the burden to Petitioner to prove why he was not a flight risk or danger to the community; (3) improperly considering her own speculation regarding an asylum seeker's interests in her determination; and (4) failing to consider evidence mitigating flight risk and alternatives to detention. Mot. at 9-12. The Court considers these alleged errors below to determine whether they amount to a violation of due process.

Regarding Petitioner's first argument, the issue is whether the upcoming hearing date and the evidence of his entry into the country in the record constitute "probative and specific" evidence that the IJ could properly find met the government's burden to show flight risk. *See Guerra*, 23 I&N Dec. 37. In considering the hearing date, the IJ stated that Petitioner had an upcoming hearing in a month, and "it wouldn't make sense to this court that a respondent be released, and then, have his proceedings and applications for relief

26-cv-0266-JES-VET

prolonged. That's counterintuitive. If the respondent really wants his claims to be heard, the court would assume he'd want them heard as soon as possible." Trans. at 6.

The IJ's reasoning regarding the probative value of the upcoming hearing is not clear. *See id.* The IJ appears to argue *sua sponte* that Petitioner's desire to be free from detention is evidence that he wants to flee. *See id.* at 6. However, that an individual subject to executive detention wishes for a check on his detention is unremarkable: indeed, the right to liberty from unjust executive detention is an underlying principle of our Constitution. *See* U.S. Const. amend. V, § 1; *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects."); The Federalist No. 84 (Alexander Hamilton) ("The practice of arbitrary imprisonments has been, in all ages, the favorite and most formidable instruments of tyranny."). Further, the IJ seems to have declined to consider Petitioner's argument that release on bond would make it easier for counsel to prepare for and assist in his upcoming asylum case merits hearing. ECF No. 9-3 at 7. This evidence as presented in this matter thus has little to no probative value.[1]

Regarding manner of entry, while an alien's "manner of entry in the United States" is a factor listed in *Guerra*, the record of Petitioner's entrance into the country here lacks the indicia of probativeness and specificity the BIA emphasized in *Guerra*. *See generally,* Trans. At the hearing, regarding manner of entry, the government stated only, "we have an individual who has entered the United States without inspection." Trans. at 3. The IJ reviewed the record in the case, which included Petitioner's Record of Deportable/Inadmissible Alien. ECF No. 9-2. The Record states that Petitioner illegally entered the United States from Mexico with a group of 50 individuals near San Ysidro, California. *Id.* at 10-11. At the hearing, Petitioner argued that he was not evading the

---

[1] Perhaps tellingly, the BIA declined to include the date of a detainee's next hearing in its list of *Guerra* factors, despite the presence of upcoming hearings as a fact in most if not all bond hearings. *See* 23 I&N Dec. at 40.

26-cv-0266-JES-VET

government in his manner of entry, but instead waiting to be apprehended with the group of 50. Trans. at 4. Petitioner argued that he believed crossing without an official appointment was the only way to begin his asylum process considering the political changes in the United States around January 1, 2025, when he entered. *Id.* The IJ did not appear to consider the merits of this argument, stating only that Petitioner "could have presented himself at a designated port of entry and sought asylum," and "did not do so," which shows "a concern regarding evasion of immigration officials." *Id.* at 7. Unlike in *Matter of Guerra*, where the BIA emphasized that an arrest record was probative and specific because it included details and indicia of reliability, here the IJ relied merely on a single sentence in a record created by respondents, which did not refute Petitioner's explanation of events or show any particular scope or seriousness of flight risk. *See Guerra*, 25 I&N Dec. at 40 (explaining that the "decision to give this evidence considerable weight above other factors ... was reasonable given the scope and seriousness of the alleged criminal activity."); *cf. Espana v. Nessinger*, No. 26-CV-014-JJM-PAS, 2026 WL 821788, at *11 (D.R.I. Mar. 25, 2026) (explaining that IJs should use caution in sole reliance upon forms created by immigration authorities). Therefore, the evidence of Petitioner's manner of entry into the country as presented in the record and at the hearing had minimal probative value under the standard for reliance on law enforcement documents set forth in *Guerra*. *See id.* Upon analysis of Petitioner's first argument, the Court finds that the IJ's reliance on evidence with minimal probative or specific value under *Guerra* to find flight risk weighs strongly in favor of finding that the IJ failed to apply the proper standard at the hearing. *See id.*; *Judulang v. Chertoff*, 562 F. Supp. 2d 1119, 1127 (S.D. Cal. 2008) (holding that an IJ erred by denying bond based on evidence that was insufficient as a matter of law); *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999) (explaining that due process cannot be satisfied when evidence at a bond hearing is insufficient as a matter of law).

Second, Petitioner argues that the IJ improperly placed the burden on him rather than the government. *See generally*, Trans. For example, the IJ appears to have taken

Respondents' cursory arguments regarding Petitioner's upcoming hearing and entrance into the country at face value despite contradictory explanations, requiring Petitioner to refute the statements rather than requiring Respondents to prove their evidentiary value. *See generally*, Trans. However, as the Court does not have access to Respondents' briefing for the bond hearing, the Court is unable to determine whether Respondents' arguments were less cursory in the briefing than at the hearing, which could merit the IJ asking more of Petitioner at the hearing. The Court thus declines to analyze this argument in depth but notes that, on the record made available by the parties in this motion, it weighs in favor of finding that the IJ did not apply the proper burden.

Third, Petitioner argues that the IJ improperly considered her own beliefs and speculation as evidence. Mot. at 11-12. "[A]n immigration judge has a responsibility to function as a neutral, impartial arbiter and must be careful to refrain from assuming the role of advocate for either party." *Islam v. Gonzales*, 469 F.3d 53, 55 (2d Cir. 2006). As highlighted above, the IJ speculated about Petitioner's motives for seeking release. Trans. at 6 ("If [Petitioner] really wants his claims to be heard, the court would assume he'd want them heard as soon as possible."). This speculation was improper for her to consider under *Guerra*. *See* 25 I&N Dec. at 40; *Kamara v. Garland*, No. 24-CV-743-LJV, 2025 WL 1651063, at *2 (W.D.N.Y. June 11, 2025) (explaining the importance of IJ neutrality for due process in bond hearings). An IJ's role at a bond hearing is to determine whether the government has met its burden to detain Petitioner, not to concoct theories regarding Petitioner's motivations. *See id.* The IJ thus committed legal error by considering her own speculation, which weighs in favor of finding that she applied the wrong standard at the hearing.

Fourth, Petitioner argues that the IJ failed to consider mitigating factors and alternatives to detention. Mot. at 12. Respondents do not contest that IJs are required to consider mitigating factors and alternatives to detention at bond hearings. *See generally*, Opp'n. As explained above, the IJ appeared to ignore Petitioner's alternative explanation of his entry into the country even though the government and the documents in the record

26-cv-0266-JES-VET

did not refute it. *See* Trans. at 4. Additionally, at the beginning of the hearing, the government stated that a sponsor was willing to take Petitioner at a shelter for immigrants, although it was not a "personal sponsor." *Id.* at 3. Petitioner also highlighted that the shelter was willing to assist him and take him to hearings. *Id.* at 4. However, in her explanation of denying bond, the IJ did not mention the shelter at all, and only stated that she would not hold Petitioner's lack of family ties against him. *Id.* at 6. The IJ said that no amount of bond would mitigate Petitioner's flight risk, but did not explain whether any other release conditions combined with bond could mitigate flight risk. *Id.* While the Court does not decide in this case whether and how due process requires IJs to consider mitigating factors and alternatives to detention, the IJ's lack of consideration of either weighs in favor of a finding that she failed to hold the government to its burden. *See Garcia*, 2025 WL 3466312, at *10 (holding that an IJ committed an error of law in violation of due process by finding flight risk based on a single document and ignoring mitigating evidence).

Considering all of these factors together, the Court finds that the IJ abused her discretion by failing to place the burden on the government to prove Petitioner's dangerousness or flight risk by clear and convincing evidence at the hearing. *See Enoh v. Sessions*, No. 16-CV-85(LJV), 2017 WL 2080278, at *10 (W.D.N.Y. May 15, 2017) ("Rubber stamping a prior determination with the words 'clear and convincing evidence' is simply insufficient."); *Espana v. Nessinger*, No. 26-CV-014-JJM-PAS, 2026 WL 821788, at *13 (D.R.I. Mar. 25, 2026) ("The Court therefore finds that it was legal error for the IJ to conclude that the Government had satisfied its evidentiary burden."). Because this abuse of discretion constitutes a deprivation of Petitioner's right to due process at the bond hearing, the Court **GRANTS** the motion to enforce judgment.

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Petitioner's motion to enforce judgment and **ORDERS** Respondents to provide Petitioner with a second bond determination hearing, adhering to all Constitutional requirements as interpreted by this Circuit and this Court, within **ten days** of this Order. Respondents are **ORDERED** to File

14

26-cv-0266-JES-VET

a Notice of Compliance within **five days** of providing Petitioner with the bond hearing, including apprising the Court of the results of the hearing.

    **IT IS SO ORDERED.**

Dated: May 8, 2026

Honorable James E. Simmons Jr.
United States District Judge

26-cv-0266-JES-VET